UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

**DOUG DENO,**

   Petitioner,

v.                                                                          No. 4:24-cv-1094-P

**PROGRESSIVE CASUALTY INSURANCE COMPANY, ET AL.,**

   Intervenors.

## MEMORANDUM OPINION & ORDER

Before the Court are (1) the Motion to Dismiss filed by Progressive Casualty Insurance Company and Progressive Advanced Insurance Company (ECF No. 14) and (2) the Motion to Dismiss filed by StarStone Specialty Insurance Company, Surplus Insurance Company, and Ironshore Specialty Insurance Company (as subrogees of Waterview Management Group, LLC; ECF No. 16). ACE American Insurance Company adopted both Motions. ECF No. 31. The Court will refer to all movants collectively as the "Insurers." After considering the Motions, the briefs, and the applicable law, the Court will grant the Motions and dismiss Petitioner Doug Deno's Petition for Exoneration of Liability (ECF No. 1).

## BACKGROUND[1]

On October 13, 2024, Petitioner's M/V 1999 Carver 406 Aft Cabin yacht (the "Vessel") caught fire and exploded while docked at Silver Lake Marina on Grapevine Lake. The cause of the explosion is still under investigation. According to news reports, at least ten boats burned, and at least one person was injured. The fire damaged other real and personal property as well.

---

[1] The facts in this summary are taken from the Complaint, Progressive's First Amended Motion, and publicly available documents.

Petitioner filed a petition for exoneration from or limitation of liability under Rule 9(h) of the Federal Rules of Civil Procedure, 46 U.S.C. §§ 30501, *et seq.*, and Rule F of the Supplementary Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure. Section 30529 provides, in general, for an owner to bring action before a district court for limitation of liability. Petitioner contends this Court has subject-matter jurisdiction based on admiralty law. "The district court shall have original jurisdiction, exclusive of the courts of the States, of: (1) Any civil case of admiralty or maritime law . . . ." 28 U.S.C. § 1333. Petitioner argues that maritime law provides for federal jurisdiction in this case because Grapevine Lake is a "navigable water."

Grapevine Lake is an artificial reservoir located northwest of the Dallas Fort Worth International Airport. ECF No. 14 at 26–29. The U.S. Congress River & Harbors Act of 1945 provided for the construction of many reservoirs, including Grapevine Lake. *Id.* Grapevine Lake was constructed by erecting a 12,850-foot-long dam, a 137-foot-high earth-fill embankment, and a 500-foot uncontrolled concrete spillway on Denton Creek beginning in 1948. *Id.* at 26. The dam is located on the southeastern side of Grapevine Lake and is fed primarily from Denton Creek. ECF No. 14 at 26–29. Once the dam was completed in 1952, impoundment began. *Id.* Grapevine Lake is operated by the United States Army Corps of Engineers primarily for flood control and water conservation. *Id.* at 28–29. Grapevine Lake is also used for recreational purposes. *Id.*

(Remainder of page blank on purpose.)

Denton Creek, which feeds Grapevine Lake, is located entirely within the State of Texas. ECF No. 14 at 35. Denton Creek connects to the Trinity River at Elk Fork Trinity River southeast of Grapevine Dam.



Petitioner filed a petition for exoneration from or limitation of liability and notice of monition. ECF Nos. 1, 2. The Court issued a monition and ordered any persons with claims arising from the incident or objecting to Petitioner's rights of exoneration to file with this Court. ECF No. 9.

The Insurers now move to dismiss this case under Rule 12(b)(1) of the Federal Rules of Civil Procedure. Insurers argue this Court lacks subject-matter jurisdiction because Grapevine Lake is not a navigable water within the meaning of admiralty law. Specifically, Insurers contend Petitioner failed to allege (1) that Grapevine Lake is navigable water under the "location" test and (2) whether the incident has the potential to impact maritime commerce and a substantial relationship to traditional maritime activity under the "connection with" test.

## LEGAL STANDARD

A Rule 12(b)(1) motion "may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506 (2006). A court must dismiss the action if it determines that it lacks jurisdiction over the subject matter. *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998). A dismissal under Rule 12(b)(1) "is not a determination of the merits" and "does not prevent the plaintiff from pursuing a claim in a court that does have proper jurisdiction." *Id.* Considering Rule 12(b)(1) motions first "prevents a court without jurisdiction from prematurely dismissing a case with prejudice." *Id.*

A motion to dismiss based on the complaint alone presents a "facial attack" that requires the court to merely decide whether the allegations in the complaint, which are presumed to be true, sufficiently state a basis for subject matter jurisdiction. *See Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981). "If those jurisdictional allegations are sufficient the complaint stands." *Id.*

4

## ANALYSIS

District courts have original jurisdiction in admiralty cases. 28 U.S.C. § 1333(1); *See also Jerome B. Grubart, Inc. v. Great Lakes of Dredge & Dock Co.*, 513 U.S. 527, 531 (1995). That jurisdiction flows from the United States Constitution, which grants federal courts authority to hear "all Cases of admiralty and maritime Jurisdiction." U.S. CONST., art. III, § 2. Congress later captured that power in statutory form, giving federal courts "original jurisdiction . . . of . . . any civil case of admiralty or maritime jurisdiction." 28 U.S.C. § 1331(1); *See also Grubart*, 513 U.S. at 531.

A party asserting jurisdiction based on admiralty law must satisfy two tests: the "location" test and the "connection with" test. *Grubart*, 513 U.S. at 534.

First, the "location" test is satisfied either if (a) the injury occurred on navigable waters or (b) the injury occurred on land but was caused by a vessel on navigable waters. *Id.* A navigable water is a body of water which forms a continued highway for interstate or foreign commerce. *The Daniel Ball*, 77 U.S. 557, 563 (1850).

Second, once the court determines a body is a navigable water, the "connection with" test is satisfied if (a) the incident "has a potential disruptive impact on maritime commerce," and (b) "the general character of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity." *Grubart*, 513 U.S. at 534. The court found that because the incident caused damage to an underwater structure and could disrupt the course of the water, it satisfied the "connection with" test. *Id.* at 539–40.

The test for whether a body of water is navigable finds its roots in the English common law. *Escanaba Co. v. Chi*, 107 U.S. 678, 682 (1882). The common-law test for navigable waters asked whether the body of water was subject to the "ebb and flow of the tide." *Id.* That test reflected the fact that in England, almost all waters that were navigable in fact were subject to the "ebb and flow of the tide." *Id.* That test has long been discarded in the United States because by the nineteenth century, vessels could navigate inland far from the reach of the tide. *Id.* The

English test remained important in this country only when establishing rights of riparian owners to "the bed of the streams." *Id.* at 682–83.

*The Daniel Ball*, the seminal case on the subject, provided the definition of "navigable waters" courts use today: "waters which form in their ordinary condition by themselves, or by uniting with other waters, a continued highway over which commerce is or may be carried on with other States or foreign countries in the customary modes in which such commerce is conducted by water." 77 U.S. at 563. In other words, to be a navigable water, a body of water must either serve as a potential highway for out-of-state commerce or connect to other bodies of water that do. In *The Daniel Ball*, the incident in question occurred on the Grand River, which flows into Lake Michigan. *Id.* at 564. The Grand River could carry a large steamer with merchandise or people to Lake Michigan from as far inland as Grand Rapids, thus connecting with the other states that share Lake Michigan. *Id.* Because the Grand River formed a "continued highway for commerce, both with other States and with foreign countries" it was a navigable water. *Id.*

A body of water is not navigable for admiralty purposes if it is located within one state alone. *See The Daniel Ball*, 77 U.S. at 564–65 (1850); *See also Guillory v. Outboard Motor Corp.*, 956 F.2d 114 (5th Cir. 1992). In *Guillory*, the petitioner argued that the district court had subject-matter jurisdiction under admiralty law. *Guillory*, 956 F.2d at 115. Petitioner brought an action under the Limitation of Liability Act for an incident that occurred while he was on his bass boat on Crooked Creek Reservoir, Louisiana. *Id.* The Fifth Circuit held that the Reservoir was not a navigable waterway based on the following facts: the Reservoir was entirely within Louisiana; it was created for recreational use and flood control; and the dam blocked vessels from interstate travel.

Grapevine Lake and the lake in *Guillory* have several striking characteristics in common: both are reservoirs; both were created primarily for flood-control and are now used for recreation; both are located entirely within one state; and both have dams that block access to navigable waters. Under *Guillory*, Grapevine Lake has all the hallmarks of a non-navigable water.

*Hardwick v. Pro-line Boats* provides another helpful example. 895 F. Supp. 145, (S.D. Tex. 1995). In *Hardwick,* a plaintiff invoked admiralty jurisdiction based on a boating accident that happened on Lake Houston. *Hardwick,* 895 F. Supp. at 146. Lake Houston was formed by damming the San Jacinto River, which is navigable by virtue of its connection to the Gulf of America.[2] *Id.* at 147. But the dam blocks access to the San Jacinto River from Lake Houston, and there was no evidence of anyone traveling interstate from the Lake. *Id.* at 148. The court found the Lake was entirely landlocked, as a vessel there could not travel to the Gulf or to any other state. *Id.* at 148, 149.

Grapevine Lake is landlocked. Just as the dam in *Hardwick* blocked vessel passage to the Gulf of America, Grapevine Lake's dam blocks vessel passage to the Trinity River. Likewise, there is no evidence presented of anyone having traveled interstate from Grapevine Lake, as Denton Creek is located entirely within Texas.

Petitioner argues that the Court may exercise jurisdiction because Grapevine Lake is navigable under the definition of "navigable waters" in 33 C.F.R. § 329.4 and the definition of "waters of the United States" in 40 C.F.R. § 120.2. ECF No. 33 at 5–6. But § 329.4 applies only to "all Corps of Engineers districts and divisions". 33 C.F.R. § 329.2. And § 120.2 applies not to the scope of admiralty jurisdiction but to the Clean Water Act ("CWA").[3] 40 C.F.R. § 120.1.

Next, Petitioner relies on a consent agreement and final order from the EPA's Office of Enforcement and Compliance Assurance. ECF No. 1 at 1. The agreement defined Grapevine Lake as a navigable water within 40 C.F.R. § 112.2. ECF No. 1 at 1. The consent agreement was entered under the authority of the EPA by sections of the CWA and other

---

[2] Formerly, and perhaps more commonly, known as the Gulf of Mexico. *See* Exec. Order No. 14,172, 90 Fed. Reg. 8,629 (Jan. 20, 2025) (directing the Secretary of the Interior to rename the Gulf of Mexico to the "Gulf of America").

[3] Besides, the EPA is currently bound by an injunction prohibiting it from implementing or enforcing § 120.2 because the rule does not accurately reflect the Supreme Court's interpretation of the CWA's jurisdictional language. *Texas v. U.S. Env't Prot. Agency*, 662 F. Supp. 3d 739, 759 (S.D. Tex. 2023) (comparing § 120.2 to *Rapanos v. United States*, 547 U.S. 715, 765–66 (2006)). Petitioner's proposed standards are not the correct ones.

regulations. ECF No. 1 at 1. By agreeing that Grapevine Lake is a navigable water under those statutes, the parties stipulated that the EPA had jurisdiction. ECF No. 1 at 1.

Petitioner's reliance upon this order is misplaced. First, this Court is not bound to follow a stipulation by two parties to an administrative consent agreement. And while the CWA does use the term "navigable waters," it is defined differently there than it is in the test for admiralty jurisdiction. *Rapanos v. United States*, 547 U.S. 715, 731–32 (2006). The CWA defines "navigable waters" as "waters of the United States." 33 U.S.C. § 1362(7). In *Rapanos*, petitioners argued the definition of "navigable waters" was limited to the traditional *Daniel Ball* test for admiralty law. *Id.* The Supreme Court explained that the CWA's use of the term "navigable waters" was slightly broader than the traditional use of the term. *Id.* at 731. The Court has confirmed this understanding as recently as 2023 while nevertheless refusing to "read 'navigable' out of the statute." *Sackett v. Env't Prot. Agency*, 598 U.S. 651, 672 (2023). Thus, even if Grapevine Lake qualified as a "navigable water" within the meaning of the CWA—which is doubtful given the Supreme Court's insistence on giving meaning to the word "navigable"—it would not suffice to confer the Court with admiralty jurisdiction over this action.

\* \* \*

To invoke a federal court's admiralty jurisdiction, Petitioner has the burden to allege that (1) Grapevine Lake is a navigable water and (2) "the accident has the potential disruptive impact on maritime commerce and the activity giving rise to the accident shows a substantial relationship to traditional maritime activity." *Grubart*, 513 U.S. at 535. Petitioner has not provided any evidence that Grapevine Lake is navigable. To the contrary, the Court concludes Grapevine Lake is not navigable because it is landlocked, located entirely within the State of Texas, and primarily used for flood-control and recreation. Because Petitioner has not met his burden on the first element, the Court need not address the second. Without subject-matter jurisdiction, the Court must dismiss the case.

## CONCLUSION

For the reasons stated above, the Court hereby **GRANTS** the Insurers' Motion and **DISMISSES** this action **without prejudice.**

**SO ORDERED** on this **12th day of March 2025.**

_Mark T. Pittman_
Mark T. Pittman
UNITED STATES DISTRICT JUDGE